

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

GFS, II, LLC,                )
                                      )
        Appellant,        )
                                      )
v.                                 )         **WD86185**
                                      )
JANELLE CARSON,      )        Filed:  December 12, 2023
                                      )
        Respondent.      )

### Appeal from the Circuit Court of Jackson County
### The Honorable Jerri J. Zhang, Judge

### Before Division Two: Gary D. Witt, C.J., and
### Alok Ahuja and Mark D. Pfeiffer, JJ.

GFS II, LLC, doing business as Gateway Financial Solutions ("Gateway") filed suit against Janelle Carson in the Circuit Court of Jackson County.  Gateway claimed that Carson had defaulted on a loan which financed her purchase of a used car from a Gateway affiliate.  Carson counterclaimed, alleging that Gateway had violated both federal and state statutes by selling her a defective vehicle, and by charging her $1,800.00 for an extended warranty.  After two years of litigation, Gateway moved to compel arbitration.  The circuit court denied Gateway's motion, finding that it had waived its right to compel arbitration by engaging in substantial litigation.  Gateway appeals.  We affirm.

## Factual Background

On June 17, 2019, Janelle Carson executed a "**RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)**" ("the Agreement"). The Agreement documented Carson's purchase of a used 2010 Chevrolet Malibu motor vehicle from Rightway Automotive Credit, and Rightway's extension of credit to Carson to finance the purchase. The Agreement listed the purchase price of the vehicle as $11,201.00; with fees and an extended warranty costing $1,800.00, the total amount financed was $13,295.00. The Agreement stated that Carson's loan had an annual percentage rate of 25.00%. The Agreement explained that Carson would pay a total of $20,732.78, including finance charges of $7,437.78, over the 45-month term of the loan.

The Agreement included an arbitration provision which states in relevant part:

**ARBITRATION PROVISION**

**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED**

**THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (*including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute*), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . .

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. . . . This Arbitration Provision shall survive any termination, payoff or transfer of this contract.

(Italics added).

Rightway assigned the Agreement on the day it was executed to Gateway. The two entities are affiliated.

On November 26, 2019, Gateway sent Carson a notice that she was delinquent on her loan, and that if she did not bring her account current by December 16, Gateway would exercise its rights on default. Carson claims that, shortly after purchasing the vehicle, she told "Rightway and/or [Gateway]" that she had experienced mechanical problems with the vehicle, and was not offered any coverage under the extended warranty. She alleged that she told "Rightway and/or [Gateway]" to repossess the car as she "could not afford to make payments for a defective vehicle."

On December 23, Gateway sent Carson a notice stating that it had repossessed the vehicle and intended to sell it at a private sale some time after January 2, 2020. The notice informed Carson that the sale would reduce the amount she owed, but that she would be liable for any shortfall. On January 29, 2020, Gateway sent Carson a notice of deficiency balance stating that, after sale of the car for $3,100.00, Carson owed a remaining balance of $12,067.24 on her loan.

Carson submitted evidence to the circuit court indicating that Gateway's affiliate Rightway was the purchaser of the car after its repossession, and that Rightway later resold the car to another purchaser in August 2020 for $10,344.00, on similar financing terms.

On August 18, 2020, Gateway filed a petition against Carson in the Circuit Court of Jackson County, alleging that Carson was in default under the contract, and that Carson owed a remaining balance of $8,950.65 on the loan as of the date of the petition. Carson answered the petition on June 5, 2021. She asserted several affirmative defenses, and two counterclaims. In her counterclaims, Carson alleged that Gateway had violated the Missouri Motor Vehicle Time Sales Act by requiring her to purchase a purported "extended warranty" as part of the transaction; and that it had breached express and implied warranties under the federal Magnuson-Moss Warranty Act by misrepresenting the vehicle's condition.

Gateway answered Carson's counterclaims on August 12, 2021. Although Gateway pleaded an affirmative defense, its answer did not suggest that Carson's counterclaims were subject to mandatory arbitration.

4

The parties engaged in substantial discovery. Carson served her first requests for production on Gateway on June 5, 2021; she served interrogatories, requests for admissions, and further document requests on December 3, 2021. Gateway served its own interrogatories, requests for production, and requests for admissions on Carson on January 11, 2022. The parties provided initial responses to each other's written discovery in early 2022.

The circuit court issued at least two substantive rulings concerning discovery-related disputes. Following the deposition of Gateway's Vice President of Legal Recovery, which suggested that Gateway had possession of additional information responsive to Carson's discovery requests, Carson filed a motion to enforce discovery, which the circuit court granted. Gateway served supplemental, court-ordered discovery responses in June 2022. Then, in September 2022, the circuit court denied a motion for protective order filed by Gateway, which sought to limit the topics on which Carson could examine a corporate representative designated under Rule 57.03(b)(4). The circuit court's discovery rulings had the effect of permitting Carson to explore the relationship between Gateway and Rightway. In particular, the court authorized discovery concerning other instances where Gateway had sought to recover loan deficiencies from Rightway customers, after Rightway had repurchased repossessed vehicles from Gateway, and resold them.

The circuit court held case management conferences in January, February, and June 2022. During a fourth case management conference on July 14, 2022, counsel for both parties informed the court that they were still conducting

5

discovery.  The parties jointly requested a jury trial, and the court set the case for a five-day trial beginning on October 16, 2023.

On September 23, 2022, new counsel entered their appearance on Gateway's behalf.  In its appellate brief, Gateway claims that its new counsel then "discovered the Arbitration Agreement" (even though the agreement to arbitrate appears prominently on the second page of the Agreement, which Gateway had attached to its original petition).  Based on new counsel's "discover[y]" of the Agreement's arbitration provision, Gateway filed a motion to compel arbitration on October 31, 2022 – more than two years after the filing of its petition, and more than sixteen months after Carson had asserted her counterclaims.

After receiving briefing and hearing argument from counsel, the circuit court issued an order denying Gateway's motion to compel arbitration on March 27, 2023.  The court stated that "it is uncontested that [Gateway] knew of the existence of its right to arbitrate."  The court's order also emphasized that, "after initiating this lawsuit, [Gateway] continued to litigate this matter and participated in extensive discovery for over two years before filing its Motion to Compel Arbitration," and that Carson "has expended time, money, and energy in this lawsuit for over two years."  Accordingly, the court concluded that Gateway had waived its right to compel arbitration.

Gateway appeals.[1]

---

[1]    An order denying a motion to stay litigation and compel arbitration is immediately appealable under the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(A).  *See Shelter Prods., Inc. v. OMNI Constr. Co.*, 479 S.W.3d 189, 194, 199 (Mo. App. W.D. 2016).  An order denying a motion to compel arbitration need not be denominated as a "judgment" under Rule 74.01(a) in order to be appealed.  *See, e.g., Trunnel v. Mo. Higher Educ. Loan Auth.*, 635 S.W.3d 193, 197 n.2 (Mo. App. W.D. 2021).

6

## Standard of Review

> If there is no factual dispute about the existence of an arbitration agreement, the overruling of a motion to compel arbitration is reviewed *de novo*. "An appellate court's review of the arbitrability of a dispute is *de novo*" because "[w]hether a dispute is covered by an arbitration provision is relegated to the courts as a question of law." Likewise, this "Court reviews *de novo* the *legal issue* of whether a valid, enforceable delegation clause exists within an arbitration agreement." Because contract interpretation is a question of law, a *de novo* standard of review is appropriate for appellate review of a denial of a motion to compel arbitration when a court must analyze the terms of an arbitration agreement.

*Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. 2020) (citations omitted). "We also review *de novo* whether the right to insist on arbitration, if present, has been waived." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo. App. W.D. 2010) (citing *MFA, Inc. v. HLW Builders, Inc.*, 303 S.W.3d 620, 625 (Mo. App. W.D. 2010)).

## Discussion

Gateway asserts two Points on appeal. First, it contends that an arbitrator, not the circuit court, should have decided the waiver-by-litigation question, because the parties' arbitration agreement delegates questions of "arbitrability" to the arbitrator. In its second Point, Gateway argues that even if it was proper for the circuit court to address the waiver-by-litigation question, Gateway's conduct did not waive its right to compel arbitration.

## I.

The Agreement provides that "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration." The parties do not dispute that the Federal Arbitration Act, and the caselaw interpreting it, govern this appeal.

7

Under the Federal Arbitration Act, parties may agree to arbitrate not only the merits of a dispute, but also questions concerning whether a particular dispute is subject to arbitration in the first place. The Supreme Court of the United States has explained:

> Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms. Applying the Act, we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." We have explained that an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citations omitted); *see also*, *e.g.*, *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–945 (1995). Provisions providing for arbitral – rather than judicial – resolution of "gateway" issues are referred to as "delegation" clauses.

The Missouri Supreme Court has likewise recognized that a delegation clause can remit threshold issues of arbitrability, which would normally be decided by the courts, to an arbitrator.

> "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement."
>
> . . . Questions of arbitrability include "whether the parties are bound by a given arbitration clause" and "[d]isputes over the formation of the parties' arbitration agreement and its enforceability or applicability to the dispute at issue."

8

. . . "A delegation provision giving an arbitrator the power to decide threshold issues of arbitrability 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"

"Generally, any silence or ambiguity concerning the scope of arbitrable issues should be resolved in favor of arbitration." However, there is a presumption against arbitrability "when considering whether a court or an arbitrator should decide threshold questions of arbitrability[.]" "'[C]lear and unmistakable evidence' the parties manifestly intended to arbitrate questions of arbitrability is required to overcome this presumption."

*Car Credit, Inc. v. Pitts*, 643 S.W.3d 366, 371 (Mo. 2022) (citations omitted); *see also, e.g.*, *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 439 (Mo. 2020); *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. 2018); *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 43-44 (Mo. 2017).[2]

A claim that a party has waived the right to compel arbitration, by affirmatively litigating the dispute in court, is a "threshold issue of arbitrability" that is presumptively for a court – not an arbitrator – to decide. *See, e.g.*, *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855-56 & nn. 3 & 4 (8th Cir. 2021) (collecting cases); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 263-64 (5th Cir. 2021) (same). But even if litigation-waiver is *presumptively* an issue for judicial resolution, Gateway contends that the Agreement in this case contains "clear and unmistakable evidence" that the parties intended to delegate the issue to an arbitrator.

In two cases, this Court has held that claims of litigation-waiver must be decided by an arbitrator, not by the court, if the parties' agreement contains a

---

[2]     *Theroff* overruled *Soars* and *Pinkerton*, to the extent those cases suggested that a delegation provision applied to a party's claim that it had not actually assented to a purported arbitration agreement.  591 S.W.3d at 440.

standard delegation clause stating generally that an arbitrator will decide the "arbitrability of any issue." Thus, in *Ford Motor Credit Co. v. Jones*, 549 S.W.3d 14 (Mo. App. W.D. 2018), an arbitration agreement in a similar vehicle-purchase contract provided that either party could elect to have an arbitrator decide a dispute, including "[c]laims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue." *Id.* at 17. As here, the seller-creditor in *Jones* repossessed the vehicle, and then filed suit to collect the deficiency remaining after the vehicle was sold. When the purchaser-debtor asserted counterclaims challenging the manner in which the vehicle had been repossessed and sold, the creditor moved to compel arbitration. Like the court in this case, the circuit court in *Jones* denied the motion to compel arbitration because the creditor had "waived its right to arbitrate" by "act[ing] inconsistently with its right to arbitrate" by affirmatively engaging in litigation. *Id.* at 18.

This Court reversed the circuit court's denial of the creditor's motion to compel arbitration. We held that the circuit court had erroneously decided the merits of the litigation-waiver issue, which should instead have been submitted to an arbitrator:

> Jones next argues that determining whether Ford Motor Credit waived arbitration by pursuing litigation is not encompassed by the delegation provision and was properly determined by the trial court. "[T]he presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability." More than application of a presumption, however, the delegation provision in the contract in this case explicitly provides that the arbitrator determines issues of arbitrability. The presence of this delegation provision distinguishes the cases Jones cites in his brief.

*Id.* at 24 (citation omitted).

10

The Eastern District followed *Jones*, and similarly reversed a circuit court's resolution of a waiver-by-litigation argument, in *TD Auto Finance, LLC v. Bedrosian*, 609 S.W.3d 763 (Mo. App. E.D. 2020):

> When a dispute arises, the parties may disagree not only about the merits of the dispute but also about threshold questions such as validity, enforcement, and applicability. Arbitrability questions can include the claim raised here, that the arbitration agreement is unconscionable and thus not enforceable, as well as the issue of waiver by litigation. Like arbitration in general, the question of who decides these threshold arbitrability questions is a matter of contract. Parties may agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying disputes over the merits. When evaluating the intention of parties to delegate threshold arbitrability issues to the arbitrator, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."
>
> The arbitration contract between Ms. Bedrosian and TDAF provided that upon election of either party, "any dispute" between Ms. Bedrosian and TDAF, "including any dispute over the interpretation, scope, or validity" of the arbitration contract, "or the arbitrability of any issue," would be decided by arbitration and not by a court action. We hold this is clear and unmistakable evidence of the parties' intent to delegate threshold arbitrability issues to an arbitrator.
>
> . . . .
>
> Because Ms. Bedrosian did not direct any specific challenge to the delegation, the parties' agreement to delegate threshold issues to the arbitrator is valid and enforceable. The Court must enforce that delegation. Ms. Bedrosian raised arbitrability issues of unconscionability, and waiver by litigation. Under the parties' agreement, those issues are reserved for the arbitrator. The circuit court should not have ruled on these matters. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." A court may not override the contract.

*Id.* at 770-71 (citations and footnote omitted).

Under delegation clauses virtually identical to the one at issue here, *Jones* and *Bedrosian* held that claims of waiver-by-litigation are questions of "arbitrability" which must be submitted to an arbitrator. Both cases reverse circuit court decisions which refused to compel arbitration based on findings of waiver. If we were to follow them, *Jones* and *Bedrosian* would appear to require reversal here.

Importantly, however, *Jones* and *Bedrosian* were decided before the Supreme Court of the United States addressed the waiver-by-litigation issue in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). Like this case, *Morgan* involved a claim that a contracting party had waived its right to compel arbitration by litigating the underlying dispute in court. The precise issue in *Morgan* was whether the person asserting waiver-by-litigation had to show that it had been prejudiced by the litigation. The Supreme Court held that lower courts had incorrectly imposed a prejudice requirement, where no showing of prejudice was required to support *other* contractual waiver claims. The Court explained that the policy underlying the Federal Arbitration Act "is to make 'arbitration agreements as enforceable as other contracts, but not more so.' Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Id.* at 418 (citation omitted). The Court declared: "If an *ordinary procedural rule* – whether of waiver or forfeiture or what-have-you – would counsel against enforcement of an arbitration contract, then so be it." *Id.* (emphasis added).

*Morgan* characterizes waiver-by-litigation as "an ordinary procedural rule." *Id.* The Court's opinion explains that, under § 6 of the Federal Arbitration Act, 9 U.S.C. § 6, courts are required to apply such an "ordinary procedural rule" in the same manner in which they would apply the rule to other, non-arbitration-related claims.

> [T]he text of the FAA makes clear that courts are not to create arbitration-specific procedural rules like the one we address here. Section 6 of the FAA provides that any application under the statute – including an application to stay litigation or compel arbitration – "shall be made and heard in the manner provided by law for the making and hearing of motions" (unless the statute says otherwise). A directive to a federal court to treat arbitration applications "in the manner provided by law" for all other motions is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness. Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration. As explained above, the usual federal rule of waiver does not include a prejudice requirement. So Section 6 instructs that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA.
>
> Stripped of its prejudice requirement, the Eighth Circuit's current waiver inquiry would focus on Sundance's conduct. Did Sundance, as the rest of the Eighth Circuit's test asks, knowingly relinquish the right to arbitrate by acting inconsistently with that right? On remand, the Court of Appeals may resolve that question, or (as indicated above) determine that a different procedural framework (such as forfeiture) is appropriate. Our sole holding today is that it may not make up a new procedural rule based on the FAA's "policy favoring arbitration."

*Id.* at 419.

Under *Morgan*, a court must decide a waiver-by-litigation argument, raised in opposition to a motion to compel arbitration, just as the court would

decide other waiver or procedural timeliness issues.  In the wake of *Morgan*, the Eastern District addressed the merits of a litigation-waiver argument in *Lopez v. GMT Auto Sales, Inc.*, 656 S.W.3d 315 (Mo. App. E.D. 2022) – *despite the presence of a delegation clause <u>identical</u> to the one here.*  In *Lopez*, the Court concluded, after an extended discussion, that an auto sales company had waived the right to compel arbitration by engaging in discovery, litigating discovery disputes, and filing a summary judgment motion.  *Id.* at 325-332.  The Court was plainly aware that the arbitration agreement included a delegation clause, because the Court addressed whether the delegation clause required that *another issue* be referred to an arbitrator.  *Id.* at 324.  But, unlike *Jones* and *Bedrosian*, *Lopez* decided the litigation-waiver issue itself, and did <u>not</u> apply the delegation clause, despite the appellants' argument that "the Arbitration Agreements contained severable delegation provisions, which required compelling arbitration."  *Id.* at 320.

Relying on *Morgan*, *Lopez* explains that the waiver-by-litigation issue is a question of civil procedure which implicates the court's ability to manage the litigation before it; a claim of litigation-waiver does <u>not</u> address the substantive arbitrability of a particular dispute.

> [T]he doctrine of waiver by inconsistent acts is a ***judicially created doctrine*** designed to protect the integrity and resources of the court as well as promote fairness to both parties whose disputes were subject to the benefits of "efficient and low-cost resolution of disputes" [through arbitration] from the outset of the litigation.  As made clear in Missouri jurisprudence and reiterated in *Morgan*, at issue on appeal is not whether GMT had a right to request arbitration of the dispute – it did.  The issue we must resolve is whether GMT waived that contractual right by substantially participating in litigation to a point inconsistent with an intent to

arbitrate. "[J]udicially determined waiver of the right to arbitrate where a party knows of the right to arbitrate, and acts inconsistently with that right . . . is to be distinguished from whether an arbitration contract affords the right to compel arbitration in the first place."

*Id.* at 327-28 (citations omitted). Although *Lopez* does not cite *Jones* or *Bedrosian*, it refuses to follow the approach taken in those cases, since *Lopez* decides the merits of a waiver-by-litigation argument despite a delegation clause virtually identical to the ones in those earlier cases.

Numerous courts in other jurisdictions have considered whether a standard delegation clause in an arbitration agreement, like the one contained in the Agreement, requires that issues of litigation-based waiver be referred to an arbitrator. The Supreme Courts of Georgia and Alabama have reached results consistent with *Bedrosian* and *Jones*: they held that claims of litigation-waiver must be referred to an arbitrator, under arbitration agreements delegating disputes about the "validity" or "enforceability" of the arbitration agreement, or concerning the "arbitrability" of particular disputes.[3] On the other hand, the substantial majority of the out-of-state decisions have reached the opposite result: they hold that *the courts* must decide litigation-waiver claims despite a generically-worded delegation clause.[4]

---

[3]       *Key v. Warren Averett, LLC*, No. 1210124, 2022 WL 1597691 at \*6-\*7 (Ala. May 20, 2022); *Brown v. RAC Acceptance E., LLC*, 809 S.E.2d 801, 804–05 (Ga. 2018).

[4]       *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 264-65 (5th Cir. 2021) (incorporation of American Arbitration Association ("AAA") rules into agreement, which specify that arbitrator "shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement[ ]," was not broad enough to comprehend a litigation-waiver claim where "the rules do not expressly give arbitrators the power to resolve questions of waiver through litigation."); *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (agreement providing that issues concerning "the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court," does not cover litigation-waiver); *Plaintiff's Shareholders Corp. v. S. Farm Bur.*

15

The reasons for holding that a "generic" delegation clause does not require arbitration of litigation-waiver issues are well-described in *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1 (1st Cir. 2005). *Marie* noted that § 3 of the Federal Arbitration Act, 9 U.S.C. § 3, specifies that a court may only stay litigation in favor of arbitration where "the applicant for the stay is not in default in proceeding with such arbitration." *Id.* at 12. The Court explained that "[a]

*Life Ins. Co.*, 486 F.App'x 786, 789-790 (11th Cir. 2012) (incorporation of AAA rules in arbitration agreement did not "constitute clear and unmistakable evidence of an agreement to arbitrate issues of conduct-based waiver"); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007) (agreement providing for arbitration of "the issue of arbitrability of any claim or dispute" not broad enough to comprehend litigation-based waiver claim); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 4, 13 (1st Cir. 2005) (provision delegating to arbitrator "disagreements concerning the interpretation or application of this Agreement . . . including the arbitrability of any such controversy or claim" did not take litigation-waiver argument from the court); *Westlake Servs., LLC v. Chandler*, No. 112313, 2023 WL 6632850, at *10 (Ohio App. Oct. 12, 2023) (despite incorporation of AAA rules into arbitration agreement, "[t]he argument that a party has waived its right to arbitrate through its litigation conduct does not challenge the arbitrability of any particular claim or counterclaim, [or] the 'existence, scope or validity' of the arbitration agreement . . . ."); *Jetall Companies, Inc. v. Sonder USA Inc.*, No. 01-21-00378-CV, 2022 WL 17684340 at *10, *11 n.4 (Tex. App. Dec. 15, 2022) (even though "the language in the [arbitration] provision expressly incorporating the AAA's Commercial Arbitration Rules clearly and unmistakably delegates gateway issues of arbitrability to the arbitrator," concluding that a litigation-waiver issue is for judicial resolution because "neither the arbitration provision generally nor the delegation clause specifically mentions who is to decide the issue of waiver by litigation conduct"); *Kettle Black of MA, LLC v. Commonwealth Pain Mgmt. Connection, LLC.*, 189 N.E.3d 1257, 1264–65 (Mass. App. 2022) (reference to AAA rules in arbitration agreement insufficient to delegate waiver-by-litigation issue); *Nelson v. Superior Court of San Diego Cnty.*, No. D075542, 2019 WL 5412107, at *3–4 (Cal. App. Oct. 23, 2019) (delegation of disputes over "enforcement" and "validity" of the agreement not broad enough to delegate litigation-waiver claim); *Principal Invs. v. Harrison*, 366 P.3d 688, 696 (Nev. 2016) (delegation to arbitrator of questions of agreement's "enforceability" does not comprehend litigation-waiver); *Ford Motor Credit Co. v. Cornfield*, 918 N.E.2d 1140, 1145, 1154 (Ill. App. 2009) (delegation provision provides for arbitration of "[c]laims regarding the interpretation, scope, or validity of this clause, or arbitrability of any issue"; holding that "this type of 'catch-all' provision does not include the question of the effect of a party's prior litigation, which the trial court is better qualified to determine than the arbitrator").

'default' has generally been viewed by courts as including a 'waiver.' . . . This language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves." *Id.* at 13 (citations omitted). *Marie* also explained that a litigation-waiver issue implicates the courts' case-management authority: "Where the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings." *Id.*

In *Marie*, the First Circuit noted that the judiciary has "comparative expertise" to address litigation-waiver issues, since "[j]udges are well-trained to recognize abusive forum shopping," "the inquiry heavily implicates '*judicial* procedures,'" and "the procedural waiver issue is not likely to be intertwined with the merits of the dispute." *Id.* (citations omitted). *Marie* also observed that "allowing courts to decide waiver issues . . . furthers a key purpose of the FAA: to permit speedy resolution of disputes," since it avoids having a case shuttled back-and-forth between a court and an arbitrator if the litigation-waiver claim has merit. *Id.* at 14.

Finally, *Marie* explained that it was unlikely that the parties, in agreeing to a generic delegation clause, would have understood that claims of litigation waiver were "arbitrability" issues which would be decided by an arbitrator and not a court:

> "Arbitrability" itself encompasses a variety of possible meanings, but
> the most obvious meaning focuses on certain substantive issues, and
> particularly the question of whether a particular kind of dispute at
> issue falls within the scope of the arbitration clause. . . . The context
> of the agreement suggests that this sort of substantive meaning is

> intended for the term "arbitrability" here; the reference to "arbitrability" is surrounded by references to which types of claims should be arbitrated and which should not be. We cannot say that the use of the term here evinces a clear and unmistakable intent to have waiver issues decided by the arbitrator. There are no references to waiver or similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so. The issue of who would decide such a question is an "arcane" one that employees are unlikely to have considered unless clearly spelled out by the employer.

*Id.* at 15 (citations omitted).

It makes sense to treat a litigation-waiver argument as a run-of-the-mill procedural issue to be decided *by the court* before compelling arbitration. A claim that a litigant has waived its right to compel arbitration, because it has actively and extensively litigated the case in court before seeking arbitration, is similar to many other procedural issues that routinely arise in civil litigation, and which are resolved by courts every day. Missouri courts impose numerous procedural requirements on civil litigants, which limit their ability to raise particular issues. These procedural requirements may include timing and pleading requirements, but also evidentiary rules such as the principle that a motion to arbitrate must be supported by a properly-authenticated copy of the arbitration agreement. *See Ryan v. Raytown Dodge Co.*, 296 S.W.3d 471, 473 (Mo. App. W.D. 2009) (motion to compel arbitration properly denied where the motion failed to establish authenticity of purported arbitration agreement). Courts may set additional deadlines or procedural requirements by order in a particular case. Moreover, a trial court may foreclose a party from raising particular issues because of its litigation misconduct – such as its failure to provide discovery.

A circuit court could conceivably deny a motion to compel arbitration, like the one filed by Gateway in this case, based on any number of procedural problems: because the motion is not properly formatted, or supported by sufficient factual allegations or legal authority; because the movant has failed to provide the court with a properly authenticated copy of the Agreement; because the movant has failed to provide opposing parties with discovery relevant to the negotiation, existence, or terms of the arbitration agreement; or because the movant has failed to heed motion-filing deadlines imposed by rule or by a scheduling order. It seems inconceivable that a court faced with such procedural defects would be required to refer them to an arbitrator; surely, such procedural issues are for resolution *by the court*. *Morgan* teaches that, under § 6 of the Federal Arbitration Act, claims of litigation-based waiver should be treated no differently than these other, similar procedural defaults.

The waiver-by-litigation doctrine relies on the fact that a party like Gateway has acted inconsistently with a desire to arbitrate, by actively litigating the dispute which they later claim is subject to resolution in a non-judicial forum. To the extent the doctrine seeks to prevent parties from taking inconsistent positions concerning where a dispute should be resolved, it is similar to the doctrines of judicial estoppel and "invited error," and to the principle that a party waives venue, personal jurisdiction, and similar objections by voluntarily submitting to the court's authority.[5] Courts routinely resolve such issues.

---

[5] *See, e.g.*, *Holmes v. Steelman*, 624 S.W.3d 144, 151 n. 8 (Mo. 2021) ("the doctrine of judicial estoppel prevents a party from taking a position clearly inconsistent with an earlier position"; citing *Vacca v. Mo. Dep't of Lab. & Indus. Rels.*, 575 S.W.3d 223, 235 (Mo. 2019)); *State v. Whirley*, 666 S.W.3d 223, 231 (Mo. App. W.D. 2023) ("'[U]nder the doctrine of self-invited error, [a] party cannot complain on appeal about an alleged error in which that party joined or acquiesced . . . .'" (quoting *Schaberg v.*

Moreover, under Gateway's argument, a court would seemingly be required to refer a litigation-waiver argument to an arbitrator, and stay litigation pending the arbitrator's decision, *no matter <u>when</u>* a motion to compel arbitration was filed – conceivably during trial, or even on appeal. As the Eastern District recognized, without enforcement of a robust litigation-waiver doctrine, a party could "delay a request for arbitration until jury deliberations had commenced following a trial on the merits of arbitrable claims. To allow such a result would offend established principles of fairness and utterly undermine notions of judicial economy." *Lopez*, 656 S.W.3d at 327. We note that in this case, the circuit court was forced to stay further proceedings, and vacate a five-day jury trial setting which had been in place for ten months, due to the litigation surrounding Gateway's belated motion to compel arbitration. This sort of dilatory conduct, and consequent disruption of ongoing litigation, should not be rewarded by automatically staying litigation, and referring the matter to an arbitrator, whenever a purported right to arbitration is asserted.

For all of the foregoing reasons, we conclude that our pre-*Morgan* decisions in *Ford Motor Credit Co. v. Jones*, 549 S.W.3d 14, 24 (Mo. App. W.D. 2018), and *TD Auto Finance, LLC v. Bedrosian*, 609 S.W.3d 763, 770-71 (Mo. App. E.D. 2020), should no longer be followed, to the extent they hold that a claim of waiver of the right to arbitration, based on active participation in litigation, must be submitted to an arbitrator under a generic delegation clause.

---

*Schaberg*, 637 S.W.3d 512, 518 (Mo. App. E.D. 2021)); *Loew v. Heartland Trophy Props., Inc.*, 665 S.W.3d 339, 344 (Mo. App. W.D. 2023) (waiver of venue objections); *Int. of A.R.B.*, 586 S.W.3d 846, 859 (Mo. App. W.D. 2019) (waiver of personal jurisdiction and service-of-process issues).

Consistent with this Court's more recent decision in *Lopez v. GMT Auto Sales, Inc.*, 656 S.W.3d 315, 327-28 (Mo. App. E.D. 2022), claims of waiver-by-litigation are properly decided by the circuit court, despite the fact that an arbitration agreement generally submits issues of "enforceability" or "arbitrability" to the arbitrator.  Point I is denied.[6]

## II.

Turning to the merits, the circuit court's conclusion that Gateway waived its right to compel arbitration, by engaging in more than two years of litigation, is amply justified.

> Missouri has long recognized that parties may waive the right to arbitration.  "Waiver results from a party's substantial participation in litigation to a point inconsistent with an intent to arbitrate[.]"

*Lopez*, 656 S.W.3d at 327 (citations omitted).[7]

Gateway's initial filing of its debt-collection action did not waive its right to later seek arbitration of Carson's counterclaims.  Although the Agreement broadly authorizes the parties to arbitrate disputes arising out Carson's car purchase and the financing therefor, it also permits the parties to seek certain non-arbitral remedies.  Thus, the Agreement provides that the parties "retain the right to seek remedies in small claims court for disputes or claims within that

---

[6]    Because this opinion refuses to follow this Court's prior opinions in *Jones* and *Bedrosian*, the opinion has been reviewed and approved by order of the Court *en banc*.  *See* S. Ct. Operating Rule 22.01; W.D. Special Rule 31.

[7]    *Lopez* recognized that, prior to the Supreme Court of the United States' decision in *Morgan*, Missouri courts required the party asserting waiver-by-litigation to demonstrate that it had been prejudiced by the litigation in which it was forced to participate.  656 S.W.3d at 327.  *Lopez* read *Morgan* as eliminating the prejudice requirement from the waiver analysis.  *Id*.  Gateway does not challenge this conclusion, and we do not further address it.

21

court's jurisdiction."  The Agreement also provides that a party would not waive the right to seek arbitration "by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief."

"Our courts have recognized that valid anti-waiver provisions may serve to insulate a party from waiver that results from specific actions contemplated by the agreement, such as exercising self-help remedies, like vehicle repossession, or filing an action in circuit court."  *Lopez*, 656 S.W.3d at 325.  Under the parties' Agreement, Gateway's initial filing of its petition in the circuit court, which sought to recovery a deficiency balance following Gateway's repossession and sale of Carson's car, did not waive its right to later insist on arbitration.

Carson's counterclaims were *not* exempt from the arbitration clause, however, and therefore Gateway's right to compel arbitration accrued when Carson filed her answer and counterclaims on June 5, 2021.  Gateway did not file its motion to compel arbitration until October 31, 2022, over sixteen months later.  In the interim, Gateway took numerous actions which were inconsistent with its contractual right to arbitrate.

First, Gateway's answer to Carson's counterclaims made no mention of the Agreement's arbitration provision.  "[A] defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate.  The filing of an answer is, after all, the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue."  *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012); *see Morgan*, 596 U.S. at 414

(noting that the party which later moved to compel arbitration "answered [the plaintiff's] complaint, asserting 14 affirmative defenses – but none mentioning the arbitration agreement"); *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 445 (Mo. App. W.D. 2010) (in finding that defendants had waived its right to compel arbitration, noting that "the Defendants each filed answers, none of which asserted as a defense the obligation to arbitrate").

After answering Carson's counterclaims, Gateway then engaged in extensive litigation, including propounding and responding to substantial written discovery, participating in depositions, engaging in substantial motions practice, and participating in four separate case management conferences (during the last of which the case was set for a jury trial). Gateway's participation in over a year of active litigation is sufficient to sustain the circuit court's finding that it had waived its right to compel arbitration. *See Lopez*, 656 S.W.3d at 329 (affirming finding of litigation-waiver where the party seeking to compel arbitration "committed to a course of litigation in the circuit court by engaging in over a year of motion practice and hearings," including active participation in discovery); *Millennium Anesthesiology Consultants, LLC v. Walsh*, 562 S.W.3d 373, 377 (Mo. App. E.D. 2018) (litigation-waiver established where "[t]he record demonstrates that Millennium knew it had the right to arbitrate Walsh's counterclaims and that Millennium acted inconsistently with that right when it failed to seek arbitration for ten months during which time it litigated in the circuit court"); *Gentry v. Orkin, LLC*, 490 S.W.3d 784, 789 (Mo. App. W.D. 2016) (affirming finding of litigation-waiver where party "proceeded to litigate the case for over one year before moving to compel arbitration," including "propound[ing]

and respond[ing] to discovery and fil[ing] motions and briefs without ever mentioning their purported right to arbitrate"); *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 631 (Mo. App. E.D. 1996) ("Peabody's delay for nearly two years before requesting arbitration and its pretrial maneuvering were inconsistent with its right to arbitrate.").

We find it particularly significant that on July 14, 2022, the circuit court set the case for a five-day jury trial commencing on October 16, 2023, "upon the request" of counsel for both parties. Gateway's request for a jury trial – which would fully and finally resolve the parties' claims – is flatly inconsistent with its later demand that those disputes instead by resolved through private arbitration.

Gateway seeks to excuse its significant delay in moving to compel arbitration by claiming that it was unaware of its right to compel arbitration until it retained new counsel, who "discovered" the arbitration provision in September or October 2022. Gateway's claim of ignorance of the arbitration provision strains credulity. Gateway attached the Agreement to its original petition. The Agreement is titled: "**RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (*WITH ARBITRATION PROVISION*)**." (Italics added.) The arbitration provision itself appears on page 2 of the Agreement, in a black box, titled "**ARBITRATION PROVISION**" in bold-faced and capitalized type. The existence of an arbitration provision in the Agreement was hardly an obscure matter which only expert counsel could "discover."

To the extent that Gateway is suggesting that it is not bound by its initial counsel's failure to promptly move to compel arbitration of Carson's counterclaims, we disagree. "'Generally, actions of a party's attorney, including

24

procedural neglect that precludes a client's substantive rights, are imputed to the client.'" *Hooks v. MHS Hospitality Grp., LLC*, 526 S.W.3d 136, 144 (Mo. App. W.D. 2017) (quoting *Cotleur v. Danziger*, 870 S.W.2d 234, 238 (Mo. 1994)).

Gateway claims in its briefing that, despite the length of time over which litigation occurred, a finding of waiver is unwarranted because the parties and the circuit court had not directly addressed the merits of Carson's counterclaims. It may be true that no dispositive motions had been filed, and no trial held. But Gateway only moved to compel arbitration after losing discovery disputes which permitted Carson to inquire into the relationship between Gateway and Rightway, and concerning other instances where Gateway had claimed loan deficiencies against Rightway customers after Rightway had repurchased the vehicles from Gateway. In her briefing on the discovery issues in the circuit court, Carson acknowledged that she was seeking this discovery to establish that Gateway and Rightway were operating a "repo mill," and to support a claim for punitive damages. The circuit court's discovery rulings presented a realistic prospect that the litigation could broaden not only to include a claim for punitive damages, but potentially a request for certification of the action as a class.

The circuit court's rulings, while addressing only discovery issues, were hardly insignificant. In light of those rulings, the circuit court could rightfully conclude that "[t]he timing of [Gateway's] actions demonstrates that it '"wanted to play heads I win, tails you lose," which "is the worst possible reason" for failing to move for arbitration sooner than it did.'" *Messina v. North Cent. Distrib., Inc.*, 821 F.3d 1047, 1051 (8th Cir. 2016) (quoting *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009)); *see also Gentry*,

490 S.W.3d at 790 ("That Orkin and Biron waited so long to move to compel arbitration strongly suggests that their move was purely a tactical one, as it came directly on the heels of the court's denying their motion *in limine*," which sought to exclude evidence of an earlier charge of discrimination by plaintiffs against defendant-employer).

"The function of arbitration is to be a speedy, efficient and less expensive alternative to court litigation." *Estate of Sandefur v. Greenway*, 898 S.W.2d 667, 669 (Mo. App. W.D. 1995). Gateway's conduct in this case – engaging in extensive litigation of Carson's counterclaims for more than a year – is the antithesis of seeking a streamlined, expeditious arbitral resolution.

Given Gateway's extensive litigation of Carson's counterclaims before seeking to compel arbitration, the circuit court was fully justified in finding that Gateway had waived its right to compel arbitration. Point II is denied.

## Conclusion

The order of the circuit court denying Gateway's motion to compel arbitration is affirmed.

_____
Alok Ahuja, Judge

All concur.